# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) CAUSE NO. EP-19-CR-0630-KC |
| | ) |
| JUSTIN HAGGERTY (1) | ) |

## MOTION TO CONTINUE SELF-SURRENDER DATE

**TO THE HONORABLE JUDGE OF SAID COURT:**

Defendant, **JUSTIN HAGGERTY**, through undersigned counsel, respectfully requests that the Court extend his self-surrender date currently set for on or before May 12, 2020, before 2:00 p.m, for an additional 60 days, until July 12, 2020, and would show as follows:

**I.**

On March 6, 2020, the Court sentenced Haggerty to a custodial term of 12 months and one day imprisonment. ECF No. 44. At that time, the Court ordered a self-surrender date for Haggerty and set the date of May 12, 2020, for Haggerty to surrender himself at the institution designated by the Bureau of Prisons, due in part to Haggerty's performance when placed on bond under pretrial supervision in May 2019 wherein Haggerty kept all court appearances, complied with all conditions of pretrial release, and he was not viewed as a flight risk or a danger to his community.

On April 14, 2020, Haggerty filed a motion for an appeal bond with the Fifth Circuit Court of Appeals. On April 24, 2020, that motion was denied. During the process of submitting that motion, AUSA Debra Kanof indicated that Senior Management within the U.S. Attorney's Office was opposed to an appeal bond, but they were willing to agree to a

60 day extension in the date of self-surrender. (Exhibit A) Haggerty is not requesting a hearing to decide this motion, given the current operational constraints, and would request the Court decide the motion based on this submission. As of the submission of this motion, Haggerty has not been designated to a facility by the Bureau of Prisons.

II.

### a. Changed Circumstances: COVID-19 Outbreak

As of March 18, 2020, the new strain of coronavirus which causes COVID-19, has infected over 2.9 million people, leading to at least 206,000 deaths worldwide. On March 11, 2020, the World Health Organization officially classified COVID-19 as a pandemic. The President declared a national public health emergency, and the Governor of the State of Georgia where Haggerty resides declared a public health emergency throughout the state. Protective measures that have been taken include restrictions on large gatherings, school closures, and directives to to isolate at home. Most notably, Georgia residents were ordered to "shelter in place" and required to stay inside their homes unless receiving or providing essential services or engaging in essential activities. The CDC also issued guidance that individuals at higher risk of contracting COVID-including people with underlying medical conditions—take immediate preventative actions, including avoiding crowded areas and staying home to the extent possible.

### b. Conditions of Confinement and Spread of Coronavirus

Conditions of confinement create the ideal environment for the transmission of this contagious disease. Inmates cycle in and out of detention facilities from all over the country, and people who work in the facilities including correctional officers, and care and service providers leave and return daily, without screening. Incarcerated people have

2

poorer health than the general population, and even at the best of times, medical care is limited. Many people who are incarcerated also have chronic conditions, like diabetes or HIV, which makes them vulnerable to severe forms of COVID-19. According to public health experts, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings."

Outbreaks of the flu regularly occur in jails, and during the H1N1 epidemic in 2009, many jails and prisons dealt with high numbers of cases. In China, officials have confirmed the coronavirus spreading at a rapid pace in Chinese prisons, counting 500 cases, Secretary of State, Mike Pompeo, has called for Iran to release Americans detained there because of the "deeply troubling" [r]eports that COVID-19 has spread to Iranian prisons," noting that "[t]heir detention amid increasingly deteriorating conditions defies basic human decency." Courts across Iran have granted 54,000 inmates furlough as part of the measures to contain coronavirus across the country. Across the nation, steps are already being taken to facilitate the release of elderly and sick prisoners and to reduce jail populations by discouraging the refusing the admission of individuals arrested on non-violent misdemeanor charges.

### c. Specific Conditions within the Bureau of Prisons

Over 175,000 individuals are incarcerated in federal prisons and jails, and thousands of incarcerated people and correctional staff move in and out of federal prisons every day. Although the Bureau of Prisons has modified its operations, including in some cases the suspension of internal inmate transfers, social visits and legal visits for 30 days, it nevertheless lacks the resources necessary to engage in

3

screening and testing of inmates, correctional staff, law enforcement officers and other care and service providers who enter the facility. Dozens of employees of the federal prison system recently reported their facilities were ill-prepared for a coronavirus outbreak. Federal prison union officials have warned that the combination of chronic understaffing, a new leave policy and the realities of coronavirus quarantines could lead to the first nationwide federal prison lockdown since 1995. As additional people are arrested who have been out in the community as the coronavirus spreads, if they are not symptomatic, they will be brought into BOP custody and held with the existing population, potentially bringing COVID-19 into this population held in large numbers, close quarters, and low sanitary conditions, undersigned counsel represents that she has heard anecdotally that basic sanitary supplies to help prevent viral spread — such as hand sanitizer, soap, ready inmate access to hand washing stations, are in short supply within the BOP.

    **d. Georgia's removal of quarantine limitations**

Recently, Georgia Governor Brian Kemp announced that the state would allow certain small businesses to begin to reopen on May 1, 2020. Like many other states, this action is being taken in small, incremental steps to discern whether it is safe to resume normal daily operations in the face of the COVID-19 pandemic. However, at least two federal facilities in Georgia are limiting visitations in an attempt to limit the spread of COVID-19.

    **e. Haggerty's medical conditions**

Haggerty has diagnosed neurological and medical conditions that could make him more susceptible and at risk for contracting COVID-19. Given the current understaffing of

the Bureau of Prisons (BOP), the lack of adequate numbers of testing kits, the inherently close-quartered nature of detention facilities, and the inability of the Bureau of Prisons to implement social distancing, Haggerty requests a 60-day continuance in his self-surrender date.

## III.

Furthermore, Mr. Haggerty is the sole provider for his family at this time. Haggerty is married and he and his wife have two young children. Given the limitations of quarantine and social distancing due to COVID-19, Haggerty's wife has been unable to secure employment. During this period of time, Haggerty's job supervising the manufacturing plants was declared a critical area of employment and Haggerty continued working to provide income for his wife and two young children. Haggerty's wife remained at home to care for their children, as daycare and school facilities were closed. With the reopening of Georgia's economy, it is possible that Haggerty's wife may be able to secure employment and daycare to provide for their family during his period of incarceratioin.  The additional 60-day continuance in the self-surrender date would assist in allowing his wife to obtain some form of employment and make arrangements for their children given the Georgia's recent relaxation in re-opening businesses due COVID-19 requirements.

## IV.

The circumstances that existed when the Court set Haggerty's self-surrender date have now changed and a 60-day extension in his self-surrender date is warranted for the above reasons. Because Mr. Haggerty remains a good candidate for voluntary surrender, the Court should extend Mr. Haggerty's self-surrender for 60 days. The United

States has indicated that it is not opposed to the 60-day extension. The undersigned does not request a hearing.

Respectfully Submitted,

*/s/ Sherilyn A. Bunn*
SHERILYN A. BUNN
FIRTH BUNN KERR NEILL
TX Bar No: 24081710
311 Montana, Law Center
El Paso, Texas 79902
Telephone: (915) 532-7500
Facsimile: (915) 532-7503
E-Mail: SBunn@FBKNlaw.com

## CERTIFICATE OF SERVICE

I, Sherilyn A. Bunn, hereby certify that on April 30, 2020, the foregoing Motion to Continue Self-Surrender Date was filed via CM/ECF electronic system, and a copy was served by electronic means on all registered CM/ECF attorneys and users participating in this case. Such notice constitutes service for those registered attorneys.

*/s/ Sherilyn Ann Bunn*
SHERILYN ANN BUNN

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

**UNITED STATES OF AMERICA,** )
)
**v.** ) **CAUSE NO. EP-19-CR-0630-KC**
)
**JUSTIN HAGGERTY (1)** )

## ORDER

BE IT REMEMBERED that on this day came on to be considered the Motion to Continue Self-Surrender Date in the above entitled and numbered cause, and the Court after considering said Motion is of the opinion that the following order should be entered;

IT IS ORDERED that the Defendant's Motion to Continue Self-Surrender Date, filed in the above entitled and numbered cause, be and the same is hereby (GRANTED) (DENIED).

SIGNED this the _____ day of _____ 2020.

_____
KATHLEEN CARDONE
U.S. DISTRICT JUDGE